1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   EASTERN DISTRICT OF CALIFORNIA

8

9    NAJAM AWAN, M.D.,                      No. 2:09-cv-01724-MCE-DAD

10            Plaintiff,

11       v.                                 <u>MEMORANDUM AND ORDER</u>

12   THE AROOSTOOK MEDICAL CENTER,
     HORIZONS HEALTH SERVICES,
13   GLENDA DWYER, JAY REYNOLDS,
     EASTERN MAINE HEALTHCARE
14   SYSTEMS, CATHY LANCASTER,
     DAVID PETERSON AND DOES 1-X,
15
              Defendants.
16

17                        ----oo0oo----

18       Plaintiff Najam Awan, M.D. seeks injunctive and monetary

19   relief from Defendants The Aroostook Medical Center ("TAMC");

20   Horizons Health Services ("Horizons"), a division of TAMC; Glenda

21   Dwyer, R.N., Vice President of Physician Services for TAMC; Jay

22   Reynolds, Chief Operating Officer and Chief Medical Officer for

23   TAMC; Eastern Maine Healthcare Systems ("EMHS"); Kathy Lancaster,

24   Manager of CV Services at TAMC and Horizons; and David Peterson,

25   President and CEO of TAMC, for claims of breach of contract;

26   intentional interference with contractual relations, business

27   relationships, and with economic expectation; injunctive relief;

28   negligent failure to supervise; and defamation.

                                  1

Presently before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), Improper Venue pursuant to Fed. R. Civ. P. 12(b)(3), and Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6), or to Transfer Venue pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.[1]

**BACKGROUND**[2]

Plaintiff Najam Awan, M.D. ("Plaintiff") is a resident of Sacramento County, California. (Compl. ¶ 3.) Plaintiff was previously employed as a cardiologist at TAMC. Plaintiff sues TAMC, Horizons, Glenda Dwyer, Jay Reynolds, EMHS, Cathy Lancaster, and David Peterson for events occurring during and after his employment with TAMC. TAMC and EMHS are Maine nonprofit corporations doing business in Maine. (Compl. ¶¶ 4, 8.) The residency of the other defendants is not alleged.

Plaintiff was employed at TAMC pursuant to an employment contract from November 26, 2006, to December 25, 2009. (Compl. ¶ 12.) The employment contract provided that Plaintiff would receive a "productivity bonus" for patient services that generated an excess of certain amounts of patient revenue for TAMC. (Compl. ¶ 13.)

---

[1] Since the Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, it need not address Defendants' other grounds for dismissing or transferring this action.

[2] The following facts are derived from Plaintiff's Complaint.

Plaintiff alleges that during his employment TAMC interfered with Plaintiff's ability to earn the productivity bonus by referring cardiovascular patients to a private physician in town rather than to Plaintiff.  He "politely protested" this situation to his employer.  (Compl. ¶ 13.)  Plaintiff also had discussions with TAMC "urging them to have more and better durable medical equipment for cardiovascular patients so he could provide better care for them."  (Compl. ¶ 14.)

Following several months of these discussions, on or about April 4, 2008, Defendants gave Plaintiff a written notice that his employment would be terminated without cause effective October 1, 2008.  (Compl. ¶ 15.)  Later, on or about June 18, 2008, Plaintiff met with Defendant Dwyer.  Dwyer requested that Plaintiff either sign an agreement that Defendants called "Addendum to Contract," or leave TAMC's employ immediately. (Compl. ¶ 16.)  Plaintiff agreed to sign the document.  The Addendum provided that Plaintiff would leave TAMC and stop seeing patients as of June 20, 2008, at which time he would become a "casual part-time employee," but would continue to be paid under his contract "until [he is] employed as a Cardiologist by another company or ... on October 1, 2008, whichever occurs first." (Compl. ¶ 17.)

On or about August 1, 2008, Plaintiff began employment with Prevea Health in Green Bay, Wisconsin.  Plaintiff contends that he worked as an internist for Prevea Health, not as a cardiologist.  (Compl. ¶ 18.)  On or about August 20, 2008, Defendant Dwyer sent Plaintiff a letter informing him that his employment and salary with TAMC were being terminated effective

July 31, 2008, due to his obtaining further employment as a
cardiologist.  (Compl. ¶ 19.)  Plaintiff alleges that he, both
personally and through counsel, informed Defendants that said
termination was not warranted because he was not employed as a
cardiologist at any time through September 30, 2008.  However,
Defendants maintained that they terminated the contract early
because they believe Plaintiff was practicing as a cardiologist
for Prevea Health.  (Compl. ¶ 20.)

On or about January 2, 2009, Plaintiff found prospective
employment in California with Cardiovascular Consultants of Napa
Valley, which involved getting privileges at hospitals in which
the group practiced.  (Compl. ¶ 21.)  Plaintiff alleges that in
February 2009, TAMC "falsely stated to the hospital in California
where [Plaintiff] needed to have privileges in order to work for
the prospective employer, that [Plaintiff]'s 'interpersonal,
interactive style' was 'demeaning and demoralizing.'"  (Compl.
¶ 22.)  These allegedly "false and malicious statements" were
made by TAMC in a written letter to the hospital's credentialing
committee.  (Compl. ¶ 22.)  Plaintiff alleges the letter was in
retaliation for demanding the salary he believed was due under
the "Addendum to Contract," as well as for his "continually
requesting that TAMC procure durable medical equipment that would
ensure the safety of patients and refer additional cardiology
patients to him so [he] could realize the bonus provided in his
contract."  (Compl. ¶ 22.)
///
///
///

4

1    Plaintiff further alleges he applied to "at least 100
2    potential employers in 2008-2009" but was not granted any
3    interviews until he was interviewed by Cardiovascular Consultants
4    of Napa Valley.  (Compl. ¶ 23.)  Plaintiff claims that TAMC
5    further retaliated against him by "refusing to respond to
6    inquiries by prospective employers to whom Plaintiff has sent
7    applications for employment."  (Compl. ¶ 24.)  Plaintiff contends
8    that "a number of prospective employers informed [him] that no
9    response was made by TAMC to their letter of inquiry."  (Compl.
10   ¶ 24.)

11   Plaintiff further alleges that in or about May or June 2009,
12   Defendant Reynolds reported to a hospital that "although he was
13   medically competent, [Plaintiff] was 'disruptive,' which caused
14   that hospital to investigate further before it would consider
15   granting [Plaintiff] privileges."  (Compl. ¶ 25.)

16   Plaintiff filed the present action on June 22, 2009,
17   alleging breach of the employment contract, breach of the
18   "Addendum to Contract," intentional interference with contractual
19   relations, business relationships and prospective economic
20   advantage, injunctive relief, negligent failure to supervise, and
21   defamation.  Defendants now move to dismiss all Claims for Lack
22   of Personal Jurisdiction, Improper Venue, and Failure to State a
23   Claim, or in the alternative, to Transfer Venue.

24   ///
25   ///
26   ///
27   ///
28   ///

1

**STANDARD**

2

3          Pursuant to Federal Rule of Civil Procedure 12(b)(2), a

4     party may seek dismissal of an action for lack of personal

5     jurisdiction.  Fed. R. Civ. P. 12(b).  Once a party seeks

6     dismissal under Rule 12(b)(2), the plaintiff has the burden of

7     demonstrating that personal jurisdiction exists.  Sher v.

8     Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).  Where, as here,

9     the motion is based on written materials rather than an

10    evidentiary hearing, "the plaintiff need only make a prima facie

11    showing of jurisdictional fact."  Id.  In such cases, "[the

12    court] only inquire[s] into whether [the plaintiff's] pleadings

13    and affidavits make a prima facie showing of personal

14    jurisdiction."  Caruth v. International Psychoanalytical Ass'n,

15    59 F.3d 126, 128 (9th Cir. 1995).  Although the plaintiff cannot

16    "simply rest on the bare allegations of its complaint," Amba

17    Marketing Systems, Inc. v. Jobar International, Inc., 551 F.2d

18    784, 787 (9th Cir. 1977), uncontroverted allegations in the

19    complaint must be taken as true.  AT&T v. Compagnie Bruxelles

20    Lambert, 94 F.3d 586, 588 (9th Cir. 1996).  Conflicts between

21    parties over statements contained in affidavits must be resolved

22    in the plaintiff's favor.  Id.; see Bancroft & Masters, Inc. v.

23    Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

24         Where, as here, there is no applicable federal statute

25    governing personal jurisdiction, the district court applies the

26    law of the state in which the district court sits.  See Fed. R.

27    Civ. P. 4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141 F.3d

28    1316, 1320 (9th Cir. 1998).

California's long-arm jurisdictional statute reads: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. Because this statutory limitation is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. See Panavision, 141 F.3d at 1320 (citing Cal. Civ. Proc. Code § 410.10). For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotation marks and citation omitted). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980). Ordinarily, each defendant's "contacts" with the forum state must be assessed individually. Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

**ANALYSIS**

A court may exercise either general or specific personal jurisdiction over a nonresident defendant. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn. 8-9, 104 S. Ct. 1868, 1872 nn. 8-9, 80 L. Ed. 2d 404 (1984).

7

General jurisdiction applies where a defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. <u>Data Disc., Inc. v. Systems Tech. Assoc.</u>, 557 F.2d 1280, 1286 (9th Cir. 1977) (internal quotations omitted).  Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action.  <u>Id</u>.

Plaintiff does not contend that there is general jurisdiction over any of the defendants here; he argues only for specific jurisdiction.  (Pl.'s Opp'n 13.)  Under the Ninth Circuit's three-prong test, a court may exercise specific personal jurisdiction over a nonresident defendant when:

(1)   the nonresident defendant purposefully directs its activities or consummates some transaction with the forum or a forum's resident or performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)   the plaintiff's claim arises out of or relates to the defendant's forum-related activities; and

(3)   the forum's exercise of personal jurisdiction comports with fair play and substantial justice (i.e., reasonableness).

<u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 801-802 (9th Cir. 2004).

///

1   The plaintiff bears the burden of satisfying the first two

2   prongs of the test.  <u>Sher</u>, 911 F.2d at 1361.  If the plaintiff

3   fails to satisfy either of these prongs, personal jurisdiction is

4   not established in the forum state.  If the plaintiff succeeds in

5   satisfying both of the first two prongs, the burden then shifts

6   to the defendant to "present a compelling case" that the exercise

7   of jurisdiction would not be reasonable.[3]  <u>Burger King Corp. v.</u>

8   <u>Rudzewicz</u>, 471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L. Ed. 2d

9   528 (1985).

10

11   **A.   Purposeful Availment or Direction**

12   **1.   General Principles**

13

14   Under the first prong of the Ninth Circuit's three-part

15   specific jurisdiction test, a plaintiff must establish that the

16   defendant either purposefully availed itself of the privilege of

17   conducting activities in California, or purposefully directed its

18   activities toward California.  While the Court often uses the

19   phrase "purposeful availment," to include both purposeful

20   availment and purposeful direction, availment and direction are,

21   in fact, two distinct concepts. A purposeful availment analysis

22   is most often used in suits sounding in contract.

23   ///

24   ///

25

26   [3] Because we find that the defendants have presented "a
     compelling case that jurisdiction would be unreasonable," it is
     not necessary for the Court to address the first two prongs of
27   the test.  <u>Fields v. Sedgwick Associated Risks, Ltd.</u>, 796 F.2d
     299, 302.  However, in the interest of thoroughness and judicial
28   review, the Court will set forth the arguments nonetheless.

A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.  _Schwarzenegger_, 374 F.3d at 802 (internal citations omitted).

While Plaintiff's Claims are primarily tortious, in order to thoroughly address the issues presented, and because Plaintiff asserts that specific jurisdiction can be found under either analysis, the Court will address both the contract purposeful availment test and the tort purposeful direction test of the _Schwarzenegger_ analysis.

As an initial matter, the Court notes that Plaintiff does not even attempt to meet his burden of establishing either purposeful availment or purposeful direction by each Defendant, on an individual basis.  Instead, Plaintiff attempts to lump all of Defendants' actions together.  Plaintiff alleges that "individual defendants played varying roles, but all participated in the continuing course of conduct ...."  (Pl.'s Opp'n 15.) Plaintiff further avers that "plaintiff has alleged that all of [the defendants] participated in some way or another and defendants have disputed these allegations."  (Pl.'s Opp'n 18.)

It appears to the Court that Plaintiff is attempting to impute purposeful availment to Defendants Lancaster and Peterson through the actions of their employer, TAMC or Horizons. However, "an employee's contacts with a forum state are not judged according to their employer's activities in that state."

///
///
///
///

1  Encore Productions, Inc. v. Promise Keepers, 53 F. Supp. 2d 1101,

2  1117 (D. Co. 1999); cf. Calder v. Jones, 465 U.S. 783, 790; 104

3  S. Ct. 1483, 79 L. Ed. 2d 804 (1984) ("Petitioners are correct

4  that their contacts with California are not to be judged

5  according to their employer's activities there.  On the other

6  hand, their status as employees does not somehow insulate them

7  from jurisdiction.  Each defendant's contacts with the forum

8  State must be assessed individually.").  Thus, in order to

9  establish personal jurisdiction over an employee for acts of the

10 employer, a plaintiff must show that the employee defendant

11 directed, participated in, or authorized the acts of the

12 employer.  See Smith+Noble v. South Jersey, No. CV 97-7473-WDK,

13 1998 WL 650079, at *3 (C.D. Cal. May 11, 1998).

14      The Court is unable to find any allegations of purposeful

15 availment or purposeful direction as to Defendants EMHS,

16 Lancaster, or Peterson.  Nor has Plaintiff alleged that

17 Defendants Lancaster or Peterson directed, participated in, or

18 authorized the acts of TAMC or Horizons.  Plaintiff's Complaint

19 only mentions these Defendants under the "PARTIES" section and

20 fails to set forth any factual allegations regarding any actions

21 taken on their parts.  In Plaintiff's Declaration in Support of

22 Plaintiff's Opposition to Defendant's Motion to Dismiss

23 ("Plaintiff's Declaration"), these Defendants are not named nor

24 referred to at all.  Rather, most of the allegations in

25 Plaintiff's Declaration are in regards to pre-employment

26 negotiations between Plaintiff and Dr. James Haley, Chief

27 Executive Officer of Horizons.

28 ///

Dr. Haley is not a party to this action and thus his actions are of no consequence, except to the extent that his actions may be imputed to his employer, Horizons.

Further, Plaintiff has not alleged any relationship between TAMC and EMHS, much less one that would impute TAMC's contacts to EMHS. As such, Plaintiff has failed to meet his burden for purposeful availment with respect to Defendants EMHS, Lancaster, or Peterson. Accordingly, Defendant's Motion to Dismiss is GRANTED as to Defendants EMHS, Lancaster, and Peterson for lack of personal jurisdiction. The Court now turns its attention to application of the purposeful availment test as to the remaining defendants, TAMC, Horizons, Dwyer, and Reynolds.

### 2.   Application of Purposeful Availment Test

A showing that a defendant purposefully availed itself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. Schwarzenegger, 374 F.3d 797. By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). In determining whether purposeful availment exists, a court analyzes the nonresident party's deliberate activities within the forum in light of the nature of its contract with the forum resident.

12

1  Browne v. McCain, 612 F. Supp. 2d 1118, 1124 (C.D. Cal. 2009).
2  As a result, while a party's contract with a forum resident is
3  relevant to the jurisdictional analysis, it *alone* does not
4  automatically constitute purposeful availment.  Id.  Rather,
5  courts typically look to whether the contract creates a
6  substantial connection with, or ongoing relationships and
7  obligations in, the forum.  Id.  The court must look to "prior
8  negotiations and contemplated future consequences, along with the
9  terms of the contract and the parties' actual course of dealing"
10  to determine if the defendant's contacts are "*substantial*" and
11  not merely "random, fortuitous, or attenuated." Burger King, 471
12  U.S. at 479, 480, 105 S. Ct. at 2185, 2186 (internal quotations
13  omitted).

14      First, TAMC/Horizons's employment contract with Plaintiff, a
15  forum resident, *alone* does not constitute purposeful availment.
16  Burger King, 471 U.S. at 478, 105 S. Ct. 2174.  Plaintiff alleges
17  that the numerous communications he had with representatives of
18  TAMC and Horizons in connection with negotiating his employment
19  contract are sufficient to establish purposeful availment.
20  Specifically, Plaintiff alleges that he received a telephone call
21  from Defendant Reynolds "expressing enthusiastic interest."
22  (Pl.'s Decl. ¶ 3.)  Plaintiff further alleges numerous contacts
23  with Dr. Haley evincing "extensive negotiations." (Pl.'s Decl.
24  ¶¶ 4-10.)  However, these contacts, i.e., telephone calls and
25  emails between the parties, by themselves, are not the deliberate
26  creation of a substantial connection with, or ongoing
27  relationships and obligations in, California, nor is it the
28  promotion of business with California.

1  <u>Sher</u>, 911 F.2d at 1362; <u>Peterson v. Kennedy</u>, 771 F.2d 1244, 1262

2  (9th Cir. 1985) ("[U]se of the mails, telephone, or other

3  international communications simply do not qualify as purposeful

4  activity invoking the benefits and protection of the [forum]

5  state.").

6      Moreover, Plaintiff admits that *he responded to* an

7  advertisement in the <u>New England Journal of Medicine</u>, indicating

8  that Defendants TAMC and Horizons did not solicit him from

9  California.  (Pl.'s Decl. ¶ 3.)  Rather, the employment contract

10 was to be performed in Maine and any future continuing

11 obligations thereunder were to occur in Maine, not California.

12 The terms of the contract required that Plaintiff move to Maine,

13 which Plaintiff did in fact do, in order to perform under the

14 contract.  Furthermore, the contract's choice of law provision

15 states "[t]he rights and remedies of the parties to this

16 Agreement shall be interpreted, construed, and enforced pursuant

17 to and in accordance with the laws of Maine."  Even notices under

18 the employment contract were to be sent to Plaintiff at a Maine

19 address.  Furthermore, Plaintiff's termination occurred in Maine.

20 Plaintiff does assert that his salary was "directly deposited by

21 defendants in my bank account in Roseville, California."  (Pl.'s

22 Decl. 3.)  However, as discussed below, the act of depositing

23 money into an account is not comparable to the act of withdrawing

24 money from an account.  There is no "substantial connection" with

25 California because neither TAMC, including Horizons, nor any of

26 its employees undertook any affirmative action to promote

27 business within California.

28 ///

1    Plaintiff's reliance on <u>Hirsch v. Blue Cross, Blue Shield of
2    Kansas City</u>, 800 F.2d 1474 (9th Cir. 1986), is misplaced.  <u>Hirsch</u>
3    involved an insurance company that freely negotiated with another
4    company to provide insurance to all of their nationwide employees
5    and who thereafter accepted payments from a California resident
6    under that agreement—thereby establishing a continuing obligation
7    to provide health care coverage to the California resident in
8    California.  Here, on the other hand, TAMC's and Horizons'
9    continuing obligations were simply to provide a California
10   resident with employment in Maine.

11   Plaintiff's further comparison with <u>Haisten v. Grass Valley
12   medical Reimbursement Fund, Ltd.</u>, 784 F.2d 1392 (9th Cir. 1986),
13   is likewise misguided.  <u>Haisten</u> again involved the act of
14   insuring California residents, thereby creating a continuing
15   obligation with those residents in California.  In fact, "its
16   only purpose was to provide insurance for California doctors
17   treating California patents and to avoid requirements imposed by
18   California law."  <u>Id</u>. at 1396 ("Moreover, the district court
19   found that the reason for the Fund's existence was 'for the
20   benefit of California residents; to wit, California doctors.'").
21   Furthermore, the terms of the contract itself evidenced the
22   continuing obligation to California by expressly restricting
23   reimbursement to "amounts paid by the Insured ... by reason of
24   professional negligence (medical malpractice) occurring *in the
25   State of California* ...." <u>Id</u>. at 1398-99.
26   ///
27   ///
28   ///

1    Here, Plaintiff, while a California resident, was to be a
2    Maine doctor, treating Maine patients in a Maine hospital.
3    (Compl. Ex. A 1 ("PHYSICIAN shall be qualified (1) to practice
4    medicine in the State of Maine").)  Plaintiff argues that here
5    "payments continued on [the] contract even as plaintiff returned
6    to his domicile in California."  However, these payments are not
7    similar to the insurance company payments.  In those cases, any
8    payments *made to* the insurance companies were made *from*
9    *California*.   In those situations, the insurance companies were
10   benefitting from the income derived from California premiums.
11   Haisten, 784 F.2d at 1401.  However, here, the payments were *made*
12   *to Plaintiff* by TAMC *from Maine*. Furthermore, it was Plaintiff's
13   unilateral activity of maintaining a California bank account that
14   caused such payments to be made there.  Here, TAMC expected and
15   specifically bargained for Plaintiff to move from California to
16   Maine, to reside in Maine, and to perform services in Maine.

17       Therefore, the Court finds that Plaintiff has not
18   established that each of the remaining Defendants (TAMC,
19   Horizons, Dwyer, and Reynolds) purposefully availed themselves of
20   the privilege of conducting activities in California.

21

22            **3.   Application of Purposeful Direction Test**

23

24       A showing that a defendant purposefully directed his conduct
25   toward a forum state usually consists of evidence of the
26   defendant's actions outside the forum state that are directed at
27   the forum.   Schwarzenegger, 374 F.3d at 803.
28   ///

The Ninth Circuit evaluates purposeful direction under the three-part "effects" test traceable to the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The Ninth Circuit described Calder and its three-part test as follows:

> Calder stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." ... [Under] Calder, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted).

Each of the Calder factors will now be considered.

### a.   Intentional Act

Plaintiff alleges that Defendants "committed an intentional act" by intentionally interfering with his contractual relations with a third party for his pending employment by sending inappropriate letters to the third party. Plaintiff argues that "after plaintiff left the employ of defendants and returned to his domicile, defendants continued to take a series of actions that affected plaintiff's livelihood in [California]." (Pl.'s Opp'n 17-18.) Specifically, Plaintiff alleges that Defendant Reynolds "reported to a hospital that was inquiring about [Plaintiff's] employment at TAMC that although he was medically competent, [Plaintiff] was 'disruptive,'... (Compl. ¶ 25.)
///

17

Plaintiff further contends that "[s]aid opinions were given to the hospital to which [Plaintiff] was seeking privileges in the normal scope of employment of defendants Glenda Dwyer, Jay Reynolds and/or other employees of defendants." (Compl. ¶ 49.) Thus, by reasonable inference, Plaintiff is alleging that Defendants Dwyer and Reynolds both intentionally interfered with Plaintiff's prospective employment opportunities by writing and sending unfavorable letters of reference to Plaintiff's prospective employers in California. Plaintiff further seeks to impute these intentional acts to Defendants Dwyer's and Reynold's employers, TAMC and Horizons.[4]

Defendant Reynolds concedes that he wrote such letters, but only at the behest of the California entities, and only after Plaintiff signed a waiver authorizing the release of such information. (Def. Reynolds' Decl. ¶ 3.) Defendant Dwyer denies ever giving any references whatsoever to any California entity regarding Plaintiff's employment performance. (Def. Dwyer's Decl. ¶ 3.) While uncontroverted allegations in Plaintiff's Complaint must be accepted as true, conclusory allegations need not be. Plaintiff's reference in his Complaint to Defendant Dwyer's participation is a conclusory allegation that is directly refuted by Defendant Dwyer's Declaration that she has "never given any reference for [Plaintiff], nor do[es she] recall [] ever being asked to give him a reference."

---

[4] The Court recognizes the status of Horizons is disputed. (Def. Peterson's Decl. ¶¶ 6, 8, 9.) However, for purposes of the present motion to dismiss, the Court must resolve all conflicts over statements contained in affidavits in favor of the Plaintiff. Plaintiff alleged that Horizons is "a subsidiary of TAMC that the[] physicians worked under." (Pl.'s Decl. ¶ 4.)

(Def. Dwyer's Decl. ¶ 3.)   Plaintiff has not contradicted this
statement in his Declaration, as Defendant Dwyer is not mentioned
therein, and thus the Court finds that Plaintiff has not
adequately alleged that Defendant Dwyer committed an intentional
act.   Accordingly, Defendant's Motion to Dismiss as to Defendant
Dwyer is GRANTED.   However, the Court finds that Plaintiff has
adequately alleged Defendants TAMC, Horizons, and Reynolds have
committed intentional acts.

### b.   Express Aiming

Plaintiff must show that Defendants "expressly aimed" this
intentional act - the writing and sending of letters of reference
- at California.   This requirement is satisfied when "the
defendant is alleged to have engaged in wrongful conduct targeted
at a plaintiff whom the defendant knows to be a resident of the
forum state."   Bancroft & Masters, 223 F.3d at 1087.   In Bancroft
& Masters, the Ninth Circuit found "express aiming" at California
when the defendant sent a letter to Virginia with the alleged
intent and result of disrupting the plaintiff's California
business.   See Id.

Plaintiff alleges that "[b]y falsely and unnecessarily
submitting statements to one or more hospitals in California
where [Plaintiff] needs to have privileges in order to work for a
prospective employer, defendants intentionally interfered with
[Plaintiff's] prospective economic advantage, contractual
relations and business relationships."   (Compl. ¶ 35.)
///

19

Thus, Plaintiff is alleging that Defendants' intentional conduct was expressly aimed at the forum state because the act of interfering with Plaintiff's employment was targeted at Plaintiff's prospective employment in California.  Therefore, for purposes of assessing personal jurisdiction within California, the Court concludes that Defendants' intentional acts - the writing and sending of letters of reference - were "expressly aimed" at California.

### c.    Brunt of Harm Felt in Forum State

Plaintiff does not address this element in his Opposition. However, as Plaintiff is a resident of California and is trying to obtain employment in California, his harm is obviously felt in the California, the forum state.  Therefore, Plaintiff has satisfied this element.

### B.    Whether Plaintiff's Claims Arise From Defendants' California-related Conduct

In determining whether a plaintiff's claim arises out of a nonresident defendant's forum-related conduct, so as to satisfy Schwarzenegger's second prerequisite for establishing personal jurisdiction, the Ninth Circuit follows the "but for" test. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995).  Hence, Plaintiff must show that he would not have suffered an injury "but for" Defendants' forum-related conduct.

///
///

20

1   Plaintiff alleges that "[a]ll of the causes of action are
2   related to, or arise out of, the employment contract between
3   plaintiff and TAMC." (Pl.'s Opp'n 19.)  However, the Court has
4   already determined that the Defendant's contacts in connection
5   with this contract were insufficient to constitute "minimum
6   contacts" for personal jurisdiction purposes.  Therefore,
7   Plaintiff's Claims either need to arise out of or relate to the
8   Defendants' forum-related activities associated with the
9   intentional acts that constituted purposeful direction, i.e., the
10  communications between Defendants and the California entities
11  regarding Plaintiff's past performance.  Plaintiff's Third,
12  Fourth, Fifth and Sixth Claims, i.e., tortious interference with
13  Plaintiff's prospective economic advantage, contractual relations,
14  and business relationships, injunctive relief, negligent failure
15  to supervise, and defamation, respectively, arise out of these
16  intentional acts.  However, Plaintiff's First and Second Claims,
17  i.e., breach of employment contract and breach of termination
18  contract, respectively, do not arise out of these intentional
19  acts, but rather they arise out of the employment contract and
20  subsequently renegotiated "Addendum."  Therefore, the Court does
21  not have personal jurisdiction over Plaintiff's First and Second
22  Claims.  As such, these Claims are dismissed.
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

21

1    **C.   Reasonableness of Exercising Personal Jurisdiction**

2

3        Finally, in meeting the third prong for assessing personal

4    jurisdiction, it must appear that the exercise of personal

5    jurisdiction would "comport with fair play and substantial

6    justice." Burger King, 471 U.S. at 477-78.   The burden is on the

7    defendant to present a "*compelling* case that the exercise of

8    jurisdiction would not be reasonable." Menken v. Emm, 503 F.3d

9    at 1057 (9th Cir. 2007) (emphasis added, internal quotes

10   omitted).   The Ninth Circuit considers the following seven

11   factors when determining reasonableness: (1) the extent of the

12   defendant's purposeful interjection into the forum state's

13   affairs; (2) the burden on the defendant in defending in the

14   forum; (3) the extent of conflict with the sovereignty of the

15   defendant's state; (4) the forum state's interest in adjudicating

16   the dispute; (5) the most efficient judicial resolution of the

17   controversy; (6) the importance of the forum to the plaintiff's

18   interest in convenient and effective relief; and (7) the

19   existence of an alternative forum. Core-Vent Corp. v. Nobel

20   Industries AB, 11 F.3d 1482, 1486-87 (9th Cir. 1994).   No one

21   factor is dispositive; rather, the court must *balance* all seven

22   factors. Id. at 1488.

23        Defendants TAMC, Horizons, and Reynolds have the burden of

24   showing that personal jurisdiction is unreasonable as to them for

25   Plaintiff's Third, Fourth, Fifth, and Sixth Claims.

26   ///

27   ///

28   ///

22

**1.    Extent of Purposeful Interjection**

Defendants argue that any contact with California entities regarding Plaintiff's past employment performance "were only made in response to a request from the California entity" and only after obtaining "a waiver signed by Plaintiff." (Defs.' Mot. 14.)   Therefore, Defendants contend that "the degree of 'purposeful injection' is small." (Id. at 14.)   The Court agrees.   Considering that Defendants only took action after being requested to do so and for the benefit of Plaintiff, any purposeful interjection is, at best, minimal.   "Even if there is sufficient interjection to satisfy the purposeful availment prong, the degree of interjection may still be so small as to weigh against the reasonableness of jurisdiction." Mitan v. Feeney, 497 F.Supp.2d 1113, 1122 (C.D. Cal. 2007).   Where a defendant's contacts with the forum state are slight or minimal, "the slightness of the purposeful interjection 'militates against' a finding of the reasonableness of jurisdiction." Insurance Co. of North America v. Marina Salina Cruz, 649 F.2d 1266, 1271 (9th Cir. 1981).

Therefore, this factor weighs in favor of Defendants.

**2.    Burden on Defense**

Defendants argue that because Plaintiff has chosen to sue "high level employees who have important duties in overseeing the healthcare of Maine residents," the burden on them is extreme. (Defs.' Mot. 15.)

23

1   Defendants further point out that "[e]ven if the burden on both

2   parties were equal ..., this factor still cuts in favor of

3   Defendants." (Defs.' Mot. 15.)  Ziegler v. Indian River County,

4   64 F.3d 470, 475 (9th Cir. 1995) ("Where burdens are equal, this

5   factor tips in favor of the defendants because the law of

6   personal jurisdiction is 'primarily concerned with the

7   defendant's burden.'").

8       Plaintiff argues that the burden of travel "would occur to

9   one party or another wherever the case is tried." (Pl.'s Opp'n

10  21.) Plaintiff asserts that "[t]hese matters can be partially

11  addressed by depositions, and stipulated testimony." (Id.)

12  However, Plaintiff admits that this would "involve some

13  impairment of the right to cross-examine." (Id.)  Plaintiff

14  further asserts that the relative wealth of the parties should

15  dictate who should have to bear the burden and expense of travel.

16  However, Defendants argue that "the major problem is not the

17  expense but the fact that that [sic] numerous health care

18  providers, *all in the same one or two week period*, will be taken

19  away from their duties to wait around to testify for a trial."

20  (Def.'s Repy 6.)  The Court agrees with Defendants.

21      Plaintiff has shown little added convenience to himself if

22  he litigates in California, and the burden on the defendants to

23  conduct a trans-continental defense would appear to be

24  significant, despite modern communications and transportation.

25  Fields, 796 F.2d at 302.  Therefore, this factor is in favor of

26  Defendants.

27  ///

28  ///

24

### 3.   Conflict with Sovereignty of Defendant's State

Defendants argue that to exercise jurisdiction over this lawsuit would "infringe[] on Maine's sovereign right to control its own workplaces as well as its own healthcare system." (Defs.' Mot. 15.)

Adjudication of the dispute in a California court would interfere with the capacity of Maine courts to resolve disputes involving post-employment references.  Furthermore, under the choice-of-law provision, the employment contract is to be interpreted under the laws of Maine, and thus Maine courts have a strong interest in interpreting its own laws and customs.

Therefore, this factor is in favor of Defendants.

### 4.   Forum State's Interest

Defendants recognize that California has a strong interest in providing an effective redress for its residents.  (Defs.' Mot. 16.)  However, Defendants assert that "California has a countervailing interest ... in 'maintaining a high quality of professional medical care'" that "outweighs this general interest."  (Id. (quoting Dorn v. Mendelzon, 196 Cal. App. 3d 933, 947 (1987)).)  According to Defendants, this "paramount interest in protecting the integrity of [California's] healthcare system" decreases California's interest in litigating the present lawsuit.  (Defs.' Mot. 16.)  Plaintiff does not address this argument in his Opposition.  The Court agrees with Defendants. ///

25

1    Under California Civil Code § 43.8, a person is not subject

2  to monetary liability for communicating with a hospital when such

3  communication is "intended to aid in the evaluation of the

4  qualifications, fitness, character, or insurability of a

5  practitioner of the healing or veterinary arts." Cal. Civ. Code

6  § 43.8.  Defendant Reynolds' letters to California entities were

7  allegedly intended to aid in the evaluation of Plaintiff's

8  qualifications.  Therefore, Defendant Reynolds may have qualified

9  immunity for monetary liability under California law and thus

10 California has little interest in entertaining a lawsuit against

11 a defendant subject to such immunity.  Furthermore, as Defendants

12 point out, "[e]ncouraging such lawsuits would only discourage

13 out-of-state physicians from giving candid assessments of

14 person[s] who wish to practice medicine in California." (Def.'s

15 Mot. 16.)

16    As such, this factor weighs in favor of Defendants.

17

18    **5.   Efficiency of Resolution**

19

20    "The site where the events in question took place and most

21 of the evidence is located is usually the most efficient forum."

22 Fields, 796 F.2d at 302.  Defendants contend that Maine is that

23 site. (Defs.' Mot. 16.)  Maine is the state where the contract

24 was to be performed.  All the witnesses relating to co-workers'

25 opinions of Plaintiff all reside in Maine.  Plaintiff asserts

26 that "[t]here are potential witnesses in Sacramento, Napa,

27 Fairfield and other locations in Northern California." (Pl.'s

28 Opp'n 22.)

The Court assumes that Plaintiff is referring to the hospitals that received the letters of reference from Defendants. Because witnesses are located in both Maine and California, neither forum has a clear efficiency advantage with respect to witnesses.  Therefore, this factor is neutral.

### 6.   Plaintiff's Interest

Defendants argue that "[i]n the Ninth Circuit, 'the plaintiff's interest is not of paramount importance'" and thus, this factor does not support jurisdiction in California.  (Defs.' Mot. 17 (quoting Menken, 503 F.3d at 1061).)  Furthermore, Plaintiff admits that "[a] judgment for money damages in this District would be similar to judgments in other district courts" and that "[a]ny need for levy and execution would be in the forum where assets may be found."  (Pl.'s Opp'n 22.)  Any assets of TAMC, Horizons, or Reynolds would necessarily be in Maine.  (Def. Reynolds' Decl. ¶ 2 ["I currently reside in the State of Maine... I own no real estate in California and do not lease any property there."]; Def. Peterson's Decl. ¶ 4, 5 ["TAMC's principal, and only, place of business is in Aroostook County, Maine....Since at least 1987, TAMC has never owned any real estate, leased any property, owned any bank accounts, or had any assets located in California."]; Def. Peterson's Decl. ¶¶ 6, 7 ["Horizons Health Services' principal, and only, place of business is located in Aroostook County, Maine....

///

///

1  Horizons Health Services has never owned any real estate, leased
2  any property, owned any bank accounts, or had any assets located
3  in California."].)

4       Therefore, this factor is in favor of Defendants.

5

6            **7.   Existence of an Alternative Forum**

7

8       Plaintiff "bears the burden of proving the unavailability of
9  an alternative forum." <u>Menken</u>, 503 F.3d at 1061.  Plaintiff
10  concedes that the district courts in Maine provide an alternative
11  forum.  (Pl.'s Opp'n 22.)  Therefore, this factor cuts in favor
12  of Defendants.

13       Therefore, as six out of seven factors favor the Defendants,
14  the Court finds that Defendants have met their burden of showing
15  "a compelling case that the exercise of jurisdiction would not be
16  reasonable." <u>Menken v. Emm</u>, 503 F.3d at 1057 (9th Cir. 2007).
17  Accordingly, Plaintiff's Complaint is dismissed in its entirety
18  for lack of personal jurisdiction.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1

**CONCLUSION**

2

3       Based on the foregoing, Defendants' Motion to Dismiss for

4  Lack of Personal Jurisdiction (Docket No. 6) is GRANTED[5].

5  Accordingly, the Court does not address Defendants' Motion to

6  Dismiss for Improper Venue and Failure to State a Claim, or in

7  the alternative, to Transfer Venue as those additional grounds

8  for Defendants' Motion are rendered moot by the Court's finding

9  that personal jurisdiction is lacking in the first instance.

10       The Clerk of the Court is directed to close this file.

11       IT IS SO ORDERED.

12
 Dated: October 19, 2009

13

14  _____

15                                  MORRISON C. ENGLAND, JR.
                                    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27       [5] Because oral argument will not be of material assistance,
   the Court orders this matter submitted on the briefs.  E.D. Cal.
28  Local Rule 78-230(h).